948 F.2d 1280
 RICO Bus.Disp.Guide 7871
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
John BUSBY, on behalf of himself and all others similarly
situated, Plaintiff-Appellant,
v.
CROWN SUPPLY, INC.; International Paper Company; Omer
Fortier; Kevin McClamroch; Bruce Lang; Michael
Almeida; Linda Ambrus; Richard D.
Childers; Richard Reeves,
Defendants-Appellees.
 No. 91-2014.
 United States Court of Appeals, Fourth Circuit.
 Argued June 5, 1991.
Decided Nov. 18, 1991.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. T.S. Ellis, III, District Judge. (CA-88-87-A)
 Argued: William Francis Krebs, Kellogg, Krebs & Moran, P.C., Falls Church, Va., for appellant; Howard Adler, Jr., Davis, Graham & Stubbs, Washington, D.C., for appellees.
 On Brief: B.G. Stephenson, Fairfax, Va., for appellant; Gena E. Cadieux, John A. Francis, Davis, Graham & Stubbs, Washington, D.C., for appellees.
 E.D.Va.
 AFFIRMED.
 Before PHILLIPS, MURNAGHAN and SPROUSE, Circuit Judges.
 OPINION
 PHILLIPS, Circuit Judge:
 
 
 1
 John Busby appeals from a grant of summary judgment dismissing his civil RICO and pendent state-law claims in which he alleged that his sometime employer Crown Supply, Inc. (Crown), its corporate parent, Hammermill Paper Co. (Hammermill), and certain officers of both corporate defendants had defrauded Busby (and others) of earned sales commissions by mail and wire fraud constituting a pattern of racketeering activity. The district court concluded that as a matter of law on the material facts not in issue, neither RICO injury nor the fraudulent activity alleged were shown. We pass the question whether RICO injury was shown but agree that the requisite pattern of fraudulent activity was not. On the latter basis, we affirm the district court's dismissal of the RICO claims, and also affirm its dismissal of the two pendent state-law claims, one partially on the merits and those remaining without prejudice.
 
 
 2
 * John Busby was a longtime salesman for Crown who operated on a commissions basis. For most of the time Busby sold goods, nearly twenty years, his commissions were calculated as a percentage of Crown's "gross profit" on the goods he sold, gross profit being calculated as the difference between the retail price and the cost of the goods to Crown. Some ten years before this action was brought, officers of the company began to keep two sets of books reflecting the 2 retail sales price and the cost of goods figures. One set of books, kept internally by management, recorded the actual cost of goods to Crown, based on the suppliers' invoices plus transportation charges and, for a while, an overhead charge. Another set of books, given to salesmen like Busby, sometimes reflected cost of goods figures greater than the internally recorded actual costs. Also during this time, Hammermill, which during this period became Crown's parent corporation, negotiated with its suppliers rebates on all the goods it purchased with the rebates being paid directly to Hammermill and not to Crown so that Busby and the other salesmen allegedly were not made aware of the actual cost of goods which they sold. All of this, contends Busby, had the effect or depriving Busby and other similarly situated salesman of their rightful commissions.
 
 
 3
 Busby sued Crown, Hammermill (for whom International Paper Co., Inc. was later substituted as Hammermill's successor), and various corporate officers of the two companies, alleging in a six-count complaint violations of the Racketeer Influenced and Corrupt Organization Act (RICO), 18 U.S.C. §§ 1961 et seq., and two pendent statelaw claims. Specifically, invoking the civil remedies provision of RICO § 1964(c), he alleged in Count I a violation by Crown of RICO § 1962(a) (using income derived from a pattern of racketeering activity to operate an enterprise); in Count II, a comparable violation of § 1962(a) by Hammermill; in Count III, a violation by the various corporate officers of RICO § 1962(c) (conducting affairs of an enterprise through a pattern of racketeering activity); in Count IV, a violation by all defendants of RICO § 1962(d) (conspiracy to violate RICO §§ 1962(a) and (c)); in Count V, he alleged a pendent state-law claim of fraud; and in Count VI, a pendent state-law claim for breach of contract.
 
 
 4
 The gist of all the claims was that the various defendants, individually and in concert, deliberately had concealed from Busby and other salesmen some of the true actual cost figures upon which it had been agreed their sales commissions would be based. This was allegedly done through the device of the two sets of books with the set given the salesmen not always reflecting the lower actual costs to the corporate defendants which were only reflected in the set kept internally and unbeknownst to the salesmen. The RICO claims were based on allegations of federal wire and mail fraud in carrying out this scheme, specifically by inter-corporate transmissions by interstate wire and mail facilities of information which included the challenged cost figures and of revenues derived from the scheme to defraud.
 
 
 5
 The district court originally dismissed all the RICO claims on a Rule 12(b)(6) motion, and in consequence dismissed the pendent state-law claims without prejudice. On Busby's appeal from that earlier judgment, we reversed and remanded for further proceedings, holding, contrary to the district court, that Busby's complaint stated colorable RICO claims, so that it was error to dismiss them and, in consequence, the pendent state-law claims.[1]
 
 
 6
 On remand, following extensive discovery, the district court granted the several defendants' motions for summary judgment on all claims. The court first dismissed the § 1962(d) RICO conspiracy claim on the no intra-corporate conspiracy principle, and the pendent state-law breach of contract claim on statute of limitations grounds as to time-barred damages. The court then, following additional briefing, dismissed the remaining three RICO claims on the merits, and the remaining pendent state-law claims without prejudice in view of the federal claims' dismissals.[2]
 
 
 7
 This appeal followed. On it, Busby principally challenges the district court's dismissal of his three RICO claims alleging violations of §§ 1962(a) and (c), and the consequent dismissal without prejudice of his pendent state-law claims not earlier dismissed on the merits. He does not challenge the dismissal of his § 1962(d) RICO conspiracy claim, nor of a time-barred portion of his pendent state-law contract breach claim.[3]
 
 II
 
 8
 As indicated in our preamble, the district court dismissed the §§ 1962(a) and (c) RICO claims on alternative grounds.
 
 
 9
 First, the court held that as a matter of law on the material facts not genuinely in issue, any injury Busby had suffered was not proximately caused by the specific predicate acts of mail and wire fraud upon which he relied as establishing the pattern of racketeering activity essential to proof of both his § 1962(a) and § 1962(c) claims. Specifically, the court held that there was not sufficient evidence in the record from which a jury reasonably could have found that any of the wire or mail transmissions between Crown and Hammermill upon which Busby relied "played any causative or facilitative role in the generation, transmission, or use of the alleged false cost data." Furthermore, while recognizing that mail and wire fraud do not require that the use itself be fraudulent, but only that it be in furtherance of fraud, the court concluded that here the connection between the specific transmissions relied upon and the fraud alleged were "too attenuated and indirect" to sustain the proximate causal relationship between predicate act and injury required by § 1964(c).
 
 
 10
 Second, the court held that "[m]ore fundamentally," the record would not support a finding, critical to both the § 1962(a) and (c) claims, that Busby was ever promised or led by defendants to believe that his commissions would only be calculated on the basis of the actual landed cost to Crown. As the court saw it, that deficiency fatally undermined the underlying claim of fraud, since such a misrepresentation was critical to proof of the fraudulent scheme alleged.
 
 
 11
 The district court, assessing the probative value of the evidence in the relevant summary judgment materials in light of the proof burden, concluded that a jury could not reasonably have found the fact in Busby's favor, so that defendants were entitled to judgment as a matter of law because of the lack of a triable issue as to this critical element of Busby's claims. Applying the same standard in review, see Higgins v. E.I. DuPont de Nemours & Co., 863 F.2d 1161, 1167 (4th Cir.1988), we agree with this assessment.
 
 
 12
 While there is much dispute in the summary judgment record respecting any number of incidental or peripheral facts, on the critical question whether Busby was legally entitled to have his commission calculated on the basis of actual cost figures, the absence of sufficient evidence to support such a finding in his favor was properly seen by the district court as warranting summary judgment.
 
 
 13
 In the first place, the summary judgment record nowhere reflects any express agreement that this was how commissions were to be calculated. In his deposition, Busby was unable to claim that there was. His contention that such an understanding was implicit from the course of dealings over the years before the two-sets-of-books era, and in repeated references by the defendants to commissions being based on "net profits," is simply belied by the record. Defendants' opposing version, supported in the record, and never directly refuted by any responsive materials on Busby's part, see Celotex, 477 U.S. at 324, was that the true and only understanding on the matter was that commissions were to be calculated as a percentage of the difference between the "cost" figures given the salesmen in their "cost books" and whatever the prices at which they were able to sell. As the district court put it, "to Busby and the other salesmen, cost was what the cost book said it was." This was true both before and after the two-sets-of-books era. In the earlier years, it may be that cost in the cost books more consistently and perfectly reflected actual cost. But that there was ever any general undertaking by the defendants that this would always be the case, or indeed ever was, simply could not be rationally inferred from the record. There was to the contrary unrefuted evidence of a general understanding in the salesmen's ranks that if costs decreased in the intervals between the issuance of consecutive cost books their commissions were sometimes negotiable to reflect the lower costs but were not subject to compulsory adjustment. And the evidence also showed that Crown did not always adjust when asked to accommodate to decreased costs in such an interval, that is, did not always accommodate to "actual costs" of goods sold when such changes occurred. This of course directly belies the existence of any agreement or general understanding of entitlement to such a basis for calculating commissions. The strongest impression from the record is therefore that it was upon the cost figures as given them in their cost books, without regard to whether they perfectly reflected actual costs of goods, that the salesmen were content to set their prices, hence calculate their commissions, and most important, to make their ongoing decisions to stay in Crown's employ. Finally, it is unrefuted that the means were always at hand, though the process might be laborious, for salesmen to determine from company records available to them whether their cost books reflected the actual costs of goods they sold. This too belies any inference of entitlement to an actual cost basis for calculation, since ultimate falsification by concealment of that data manifestly would not be possible, at least not without extremely high risk, by such a clumsy expedient as the twosets-of-books scheme alleged by Busby.
 
 III
 
 14
 For the above reasons, the district court did not err in granting summary judgment dismissing all of Busby's RICO claims on the merits, and did not abuse its discretion in its consequent dismissal without prejudice of the pendent state-law claims not earlier dismissed on the merits.
 
 
 15
 AFFIRMED.
 
 
 16
 MURNAGHAN and SPROUSE, Circuit Judges, joined.
 
 
 
 [1]
 The district court had dismissed the RICO claims on alternative grounds. As to all the claims, the court held that the requisite "pattern of racketeering activity" was not pleaded, but only a "single scheme" to defraud. As to the § 1962(a) claims, the court held that the requisite injury under that section is injury traceable to the defendants' use of ill-gotten gains, rather than to the predicate acts of fraud themselves, and that the requisite injury was not pleaded
 We reversed as to each ground, holding, on the intervening authority of H.J., Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229 (1989), that a pattern of racketeering activity was adequately pleaded as to all RICO claims, and that as to the § 1962(a) claims, injury from the predicate acts of fraud sufficed and was adequately pleaded. 896 F.2d 833 (4th Cir.1990).
 
 
 [2]
 The court also denied Busby's motions for class certification and for bifurcation of the liability and damages issues
 
 
 [3]
 Busby also challenges the two procedural rulings denying his motions for class certification and for bifurcation of the liability and damages issues. In view of our disposition on the merits, we need not address those challenges
 We reserve judgment on the first ground relied upon by the district court. As to it, Busby argues that the district court erred in focussing too narrowly on a direct causal connection between the specific wire and mail transmissions relied on as predicate acts and Busby's injury. He says that the appropriate focus of the causal inquiry is on the connection between the whole process of fraud that was furthered by those particular uses of mail and wire, and his injury. There is a question here, but we can reserve judgment upon it because we agree with the district court that a more fundamental flaw in all of Busby's claims of RICO violation lies in the lack of sufficient evidence of the particular fraud alleged to create a triable issue.
 As indicated, the gravamen of Busby's fraudulent conduct theory is that defendants misrepresented to him and his fellow salesmen the actual landed cost to Crown of some of the goods sold by the salesmen; that the salesmen were legally entitled to have their commissions calculated on the basis of actual cost; and that accordingly the defendants' misrepresentations of higher than actual costs resulted in underpayment of commissions earned. There are several elements to this theory of fraudulent conduct, but the critical one for our purpose is the core factual premise that the salesmen were somehow legally entitled (whether by express contract, implied-in-fact contract, estoppel, or however) to have their commissions calculated on the basis of actual landed cost. If they were not, the fraud claim is defeated for any of several reasons the fact allegedly misrepresented would not in that case be a material fact; the salesmen could not have relied upon any misrepresentations respecting it to their detriment; nor could they have suffered any cognizable injury from any such misrepresentations made.
 While the defendants as movants for summary judgment attacked on a broader front, they centered on this as the critical flaw in Busby's case. Technically, they did so by attempting, in carrying their initial burden under Rule 56, both to negate that factual premise of Busby's claim, and to demonstrate that Busby as the party with the burden of proof on that element of his claim, did not have sufficient evidence to allow a reasonable jury to find it in his favor. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-24, 327 (1985); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1985).