Kelly BROUSSARD, Jim Stephens, Mark Zuckerman, Arnold Fischthal, John Hagar, Sal Lobello, Vincent Matera, Denis and Mary Ann Wickham, Ralph Yarusso and Kenex Corp., on Behalf of themselves and all others similarly situated, Plaintiffs,

v.

MEINEKE DISCOUNT MUFFLER SHOPS, INC., New Horizons Advertising, Inc., GKN Parts Industries Corp., GKN PLC, Ronald Smythe, Gene Zhiss and Ted Pearce, Defendants.

No. 3:94–CV255–P.

United States District Court, W.D. North Carolina, Charlotte Division.

Oct. 9, 1996.

Thomas J. Ashcraft, Charlotte, NC, James J. McCabe, John J. Soroko, Elise E. Singer, Wayne A. Mack, Jr., Duane, Morris & Heckscher, Philadelphia, PA, for Kelly Broussard, Jim Stephens, Mark Zuckerman, Arnold Fischthal, John Hagar, Sal Lobello, Vincent Matera, Dennis Wickham, Mary Ann Wickham, Kenex Corporation.

Catherine E. Thompson, E. Osborne Ayscue, Jr., Smith, Helms, Mulliss & Moore, Charlotte, NC, Fred T. Lowrance, I. Faison Hicks, Parker, Poe, Adams & Bernstein, Charlotte, NC, Erik B. Wulff, Ellen R. Lokker, Reed Smith Shaw & McClay, Washington, DC, Victor S. Friedman, Fried, Frank, Harris, Shriver & Jacobson, New York City, John F. Dienelt, Hogan & Hartson, L.L.P., Washington, DC, for Meineke Discount Muffler Shops, Inc., New Horizon Advertising Inc., GKN Parts Industries.

Catherine E. Thompson, E. Osborne Ayscue, Jr., Smith, Helms, Mulliss & Moore, Charlotte, NC, I. Fasion Hicks, Parker, Poe, Adams & Bernstein, Charlotte, NC, Erik B. Wulff, Ellen R. Lokker, Reed Smith Shaw & McClay, Washington DC, Michael Kuhn, Bracewell & Patterson, Houston, TX, Victor S. Friedman, Fried, Frank, Harris, Shriver & Jacobson, New York City, John F. Dienelt, Hogan & Hartson, L.L.P., Washington, DC, for GKN.

Catherine E. Thompson, E. Osborne Ayscue, Jr., Smith, Helms, Mulliss & Moore, Charlotte, NC, Fred T. Lowrance, Parker, Poe, Adams & Bernstein, Charlotte, NC, Erik B. Wulff, Ellen R. Lokker, Reed Smith Shaw & McClay, Washington DC, Victor S. Friedman, Fried, Frank, Harris, Shriver & Jacobson, New York City, John F. Dienelt, Hogan & Hartson, L.L.P., Washington, DC, for PLC, Ronald Smythe, Gene Zhiss, Ted Pearce.

Catherine E. Thompson, E. Osborne Ayscue, Jr., Smith, Helms, Mulliss & Moore, Charlotte, NC, Charles E. Lyons, DeLaney and Sellers, P.A., Charlotte, NC, for Michigan Franchisees.

Thomas J. Ashcraft, Charlotte, NC, James J. McCabe, Duane, Morris & Heckscher, Philadelphia, PA, for Ralph Yarusso.

## MEMORANDUM OF DECISION & ORDER

ROBERT D. POTTER, Senior District Judge.

**THIS MATTER** arises out of Franchise and Trademark Agreements ("FTAs") between the Plaintiffs and Meineke Discount

Muffler Shops, Inc. (hereinafter "Meineke" or "MDMS").

## I. BACKGROUND

Sections I and II of the Court's Memorandum of Decision & Order in response to Plaintiffs' Motion for Summary Judgment summarize the background and pertinent facts. Accordingly, the Court incorporates by reference the background and facts contained in sections I and II of the Court's Memorandum of Decision and Order in response to Plaintiffs' Motion for Summary Judgment.

## II. FACTS AS PRESENTED BY THE DEFENDANTS

The Court incorporates by reference the Defendants' facts summarized in Defendants Meineke Discount Muffler Shops, Inc., New Horizons Advertising, Inc., GKN Parts Industries Corp., Ronald Smythe, Gene Zhiss, and Ted Pearce in Support of Motion for Summary Judgment [document no. 116–1] ("Defendants' Motion") at 2–7, and Defendant GKN plc's ("GKN") Memorandum of Defendant GKN plc in Support of its Motion for Summary Judgment Memorandum [document no. 113–1] ("GKN's Motion") at 1–9. The Court also incorporates by reference the Plaintiffs' summary of facts in Plaintiffs' Memorandum of Law in Opposition to Defendants' Motions for Summary Judgment (document no. 126–1) ("Plaintiffs' Response") at 6–10.

## III. DISCUSSION

### A. *Standard for Summary Judgment*

"Under Rule 56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 321–22, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (citing Fed.R.Civ.Proc. 56(c)). "Once a defendant makes a properly supported motion for summary judgment, the burden shifts to the plaintiff to set forth specific facts showing that there is a genuine issue for trial." *Sylvia Development Corp. v. Calvert County, Md.,* 48 F.3d 810, 817 (4th Cir.1995) *citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202. "[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511. Put another way, there must be a *genuine* issue for trial. "The mere scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512. "The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict ..." and "the judge must ask himself ... whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512.

As with any summary judgment motion, "the court must draw any permissible inference from the underlying facts established in the record in the light most favorable to the non-moving party." *Austin v. Clark Equipment Co.,* 48 F.3d 833, 835 (1995). But in order for an inference to be *permissible* it must be *reasonable,* and "[w]hether an inference is reasonable cannot be decided in a vacuum; it must be considered in 'light of the competing inferences' to the contrary." *Sylvia,* 48 F.3d at 818 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)). As the Fourth Circuit has stated:

> [I]t is the province of the jury to resolve conflicting inferences from circumstantial evidence. Permissible inferences must still be within the range of reasonable probability, however, and it is the duty of the court to withdraw the case from the jury when the necessary inference is so tenuous that it rests merely upon speculation and conjecture.

*Sylvia,* 48 F.3d at 818 (citing *Ford Motor Co. v. McDavid,* 259 F.2d 261, 266 (1958) (brackets in original)); *see also Thompson Everett, Inc. v. National Cable Advert.,* 57 F.3d 1317, 1323 (4th Cir.1995). In short, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

### B. *The Statute of Limitations.*

The Defendants' Motion argues that the "undisputed facts" show: (1) that all of the named Plaintiffs knew or should have known, before December 27, 1989, that New Horizons earned a fee and operated on a for profit basis because the 1986, 1987, and 1988 WAC audits stated that "[a]dvertising commissions paid to ... New Horizons Advertising, Inc. during [1986, 1987, or 1988 respectively] were based on standard industry practice." (*See* Defendants' Motion at 25 (citing Defendant's exhibit 1–C).); (2) because the suit was filed on December 27, 1993, the longest period for any of Plaintiffs' claims is four years; and (3) the longest period of any of the applicable statute of limitations is four (4) years. Therefore, the Defendants argue, the claims are time barred because the suit was not filed within the longest statute of limitations period (four (4) years). (*See* Defendants' Motion at 23–27.)

The Plaintiffs allege that the "undisputed facts" show that the first time the Defendants accurately disclosed the extent of the commissions the Defendants were receiving from the WAC fund was in a December 1992 UFOC, which was alleged to have only been provided to franchisees who purchased a franchise subsequent to December 1992. (*See* Plaintiffs' Response at 11.) The Plaintiffs argue that the UFOCs distributed by the Defendants prior to December 1992 either did not disclose the commissions at all (1986–1989 UFOCs), or misleadingly indicated that the commissions were only a minimal 2% when the commissions on the yellow page advertising were actually 15% (1990–1992 UFOCs). (*See* Plaintiffs' Response at 11–

12.) Thus, without knowing that Meineke was earning a 15% commission through New Horizon on yellow pages, and a lesser commission on media, the Plaintiffs contend that the franchisees could not have known that Meineke had a conflict of interest in making advertising decisions regarding placing advertising in yellow pages on which Meineke earned a higher commission than on other forms of advertising.

Further, the Plaintiffs urge that the one sentence in the Defendants' 1986–1988 UFOCs that "[a]dvertising commissions paid to ... New Horizons Advertising, Inc. during [1986, 1987, or 1988 respectively] were based on standard industry practice" was not sufficient to put Plaintiffs on notice of the true nature of the advertising commissions paid to NH out of the WAC fund.

The Court does not believe that the evidence cited by the Defendants, when viewed in the light most favorable to the Plaintiffs, is sufficient for a reasonable person to find that the Plaintiffs would not have known about Defendants' administration of the WAC account given the amount of information disclosed by the Defendants. Thus, summary judgment on this issue is inappropriate.

### C. *Releases Executed by Franchisees Who Opted to Participate in the Enhanced Dealer Program*

■ Defendants assert that the express releases in Meineke's Enhanced Dealer Program ("EDP") were clear and unambiguous. Paragraphs 9 and 10 of the EDP Agreement contain the release in issue:

> 9. ... Franchisee ... hereby release Meineke Discount Muffler Shops, Inc. ... from any and all rights, duties, responsibilities, claims, or causes of action whatsoever, whether in contract or in tort, existing by common law or by statute, known or unknown heretofore existing between the released parties and Franchisee which may have accrued or which may accrue on account of, arising from or in any manner growing out of or resulting from the franchise relationship and Meineke Franchise and Trademark Agreement governing that relationship, including, but not limited to,

the claims alleged in that one certain cause of action entitled *Broussard, et al v. Meineke Discount Muffler Shops, Inc.;* Civil Action No. 3:94–CV–255 [903 F.Supp. 16 (1995) ] (the "Litigation"); on file in the United States District Court for the Western District of North Carolina, Charlotte Division, and any claims similar thereto.

10. If Franchisee is a named plaintiff in the Litigation upon signing this Agreement he shall dismiss his claims with prejudice and withdraw from the Litigation. If the Franchisee is not a plaintiff in the Litigation then upon signing this Agreement he will decline to be a plaintiff or a class member in the Litigation.

(EDP Program Agreement ¶¶ 9–10 at Defendants' Exhibit 1–D–1 at 3). Meineke's EDP offered franchisees numerous benefits including, inter alia, a new computer system, incentives to purchase additional Meineke franchises, possible reduction in advertising fees paid to NH, extension of a franchisee's market area, and an unconditional release by Meineke of all previous rights, obligations, claims, etc. that Meineke may have had against the franchisee. (*See* EDP Program Agreement at Defendants' Exhibit 1–D–1.) Despite an information campaign by the Plaintiffs that highlighted the release in the EDP,[1] the owners of nearly 500 Meineke franchises chose to participate in Meineke's EDP. (Defendants' Motion at 28.) As a result, Defendants allege that the owners of the franchises who signed up for the EDP "indisputably" released the claims in this matter in consideration for the benefits re-ceived from Meineke. (Defendants' Motion at 28–31.)

Defendants further argue the general releases executed by current and former Meineke franchisees bar all prior claims that arose prior to the date the franchisees signed the releases. More than 500 former or current franchisees executed general releases of all of their claims against Meineke at the time the franchisees terminated their relationship with Meineke. (Defendants' Motion at 32.) The franchisees terminated their relationship with Meineke by either selling or transferring their franchises to third parties between May 1, 1986 and the Court's Order certifying the class. (*See* Defendants' Motion at ¶ 43, p. 23.). In consideration for the right to exchange or renew,[2] their franchise and the release by Meineke of any claims against them, the current and former franchisees provided their explicit and unambiguous release of any and all claims they had against Meineke arising out of the FTAs, "whether they knew of them or not." (Defendants' Motion at 33.) Hence, Defendants argue, they are entitled to enforcement of the releases as a matter of law.[3]

The gravamen of the Plaintiffs' argument against the Defendants' effort to enforce the releases is that all of the releases were tainted by the Defendants' fraud. (Plaintiffs' Response at 50–57.) Additionally, the Plaintiffs allege that the releases are unenforceable because they were procured under economic duress and were the result of undue influence. (Plaintiffs' Response at 58–61.)

---

1. Plaintiffs responded to Meineke's EDP offer by initiating an information campaign in an attempt to persuade franchisees not to accept Meineke's EDP. The first letter highlighted the release in the EDP: "Meineke is asking for a release of your claims in the class action lawsuit, and you won't be getting much in return." (Exhibit 1–D–3 at 1 (letter from Associated Dealers faxed to franchisees on February 6, 1995, *cited in* Defendants' Motion at n. 9).) Other correspondence between Plaintiffs and franchisees further emphasized that the "key" element of the EDP to Meineke was the release of franchisees' claims. (*See* Exhibit 1–D–3 at 11, 12, *cited in* Defendants' Motion at n. 9.) Meineke responded to the Plaintiffs' information campaign with a Notice to All Franchisees in which Meineke stated that the release would not affect a franchisee's future

rights and that if the lawsuit involved replenishment of money to the WAC Fund, it would benefit all dealers. (Defendants' Exhibit 1–D–4 at 1.)

2. The Court notes here, as it did in its Order dated August 14, 1995 [document no. 45], that the Defendants did not formally embody the releases in the FTA as a condition of renewal until March 1995. (*See* Court Order dated August 14, 1995 at n. 2.)

3. Defendants cite several cases in which courts have upheld the validity of releases where the franchisor conditioned their consent to transfer of a franchise upon the execution of a release by the franchisee. (*See* Defendants Motion for Summary Judgment at 32–35 & nn. 12–13.)

■ This Court has previously stated that a franchisee may avoid a release if the franchisee can show that the release was obtained through fraud, mistake, or undue influence. (Order dated August 14, 1995 (citing *Parker v. Hensel*, 242 N.C. 211, 87 S.E.2d 201 (1995)); *Sexton v. Lilley*, 4 N.C.App. 606, 167 S.E.2d 467 (1969).) It is axiomatic, however, that "where the execution of such release is admitted or established by the evidence it is necessary for the plaintiff to prove the matter in avoidance." *Ward v. Heath*, 222 N.C. 470, 472, 24 S.E.2d 5, 7 (1943) (citations omitted). Hence, it is the Plaintiffs' burden to establish the fraud alleged and relied on by Plaintiffs to invalidate the instrument. *Id.*

For the foregoing reasons, the Court believes that the evidence cited by the Plaintiffs alleging that the Defendants' contractual releases were procured either by fraud, under economic duress, or under undue influence, when taken in the light most favorable to the Plaintiffs, is sufficient to allow the Plaintiffs to present their evidence to the jury. Accordingly, the Defendants' motion for summary judgment on this issue is denied.

## D. *RICO Claims*

### 1. *18 U.S.C. § 1962(c) (Count I)*

Plaintiffs allege that the Defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Pub.L. No. 91–452, tit. IX, section 901(a), 84 Stat. 941–944 (1970), codified at 18 U.S.C.A. §§ 1961–1968 (West 1984 & Supp.1996). Specifically, in Count I and II, Plaintiffs allege that the Defendants violated sections 1962(c) and 1962(d), respectively. These sections provide:

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

**4.** The Court notes, as did the Defendants in their Reply, (Defendants' Reply at 27), that the Plain-

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

■ A section 1962(c) claim requires the claimant to assert that one or more "persons" conducted or participated in an "enterprise" through a pattern of racketeering activity. The Court of Appeals for the Fourth Circuit interpreted the statutory language to mean that "'enterprise' was meant to refer to a being different from, not the same or part of, the person whose behavior the act was designed to prohibit, and, failing that, to punish." *Busby v. Crown Supply, Inc.*, 896 F.2d 833, 840 (4th Cir.1990) (quoting *United States v. Computer Sciences Corp.*, 689 F.2d 1181, 1190 (4th Cir.1982, cert. denied, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983)), *cited in* Plaintiffs' Motion at 43; *see also* Davis J. Howard, *Moving to Dismiss a Civil RICO Action*, 35 Clev.St.L.Rev. 423, 436–37 & n. 47 (stating that the "vast majority of courts hold that the 'person' contemplated by section 1962(c) must be separate and distinct from the section 1962(c) 'enterprise'" and listing cases in support); (Defendants' Motion at n. 14 (listing cases)). Hence, a threshold issue is whether the claim sufficiently alleges "persons" distinct from an "enterprise."

■ The RICO statute specifically defines "person" and "enterprise:"

(3) "person" includes any individual or entity capable of holding a legal or beneficial interest in property;

(4) "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.

18 U.S.C. § 1961(3) & (4). The gravamen of the Plaintiffs' § 1962(c) claim is their assertion that the WAC Fund is the enterprise for the RICO claims, and that enterprise is sufficiently distinct from the Defendants, who are the RICO persons. (Plaintiffs' Response at 42–47.)[4] As a matter of law, however, the

tiffs did not respond to the Defendants' assertion that the Defendants, identified as persons (Com-

WAC Fund is not an enterprise because the WAC Fund, analyzed as either a trust fund or a bank account, simply is not a "legal entity" or "any union or group of individuals associated in fact." As a result, Defendants motion for summary judgment regarding Count I will be granted.

 A legal entity is "[a]n entity, other than a natural person, who has sufficient existence in legal contemplation that it can function legally, be sued or sue and make decisions through agents as in the case of corporations." *Black's Law Dictionary* 893–94 (6th ed. 1990). A trust fund or bank account is not considered a legal entity because it cannot function legally. "In the absence of statute or case law, the weight of authority is clear that the trust estate is not a person in the eyes of the law and does not have the capacity to be sued as an entity." *(Limouze v. M.M. & P. Maritime Advancement Training, Ed. & Safety Program,* 397 F.Supp. 784, 789 (citing G.G. Bogert and G.T. Bogert, *Law of Trusts,* § 125 at 455 (5th ed. 1973)); *Plasteel Products Corp. v. Eisenberg,* 170 F.Supp. 100 (D.Mass.), *aff'd sub nom, Plasteel Products Corp. v. Helman,* 271 F.2d 354 (1st Cir.1959); *White v. Lundeberg Maryland Seamanship School, Inc.,* 57 F.R.D. 128 (D.Md.1972)). Under North Carolina law, a plaintiff seeking a judgment from a trust must sue the trustee in his or her representative capacity because the trust, by itself, is not a separate legal entity. *See* N.C.Gen.Stat. § 36A–74 (1995); *Jacobs et al. v. Weinstein,* 91 N.C.App. 138, 145, 370 S.E.2d 860, 865 (1988) ("Neither a trust estate nor trust property are recognized as separate legal entities which grant a trustee protection from the consequences of his actions." (citing Bogert, *The Law of Trusts and Trustees,* sections 718, 731 (rev. 2d ed. 1982)), *rev. denied, Matter of Jacobs,* 323 N.C. 476, 373 S.E.2d 863 (1988). Similarly, inanimate objects cannot be RICO enterprises. *Elliott v. Foufas,* 867 F.2d 877, 881 (5th Cir.1989); *Friedlander v. Nims,* 571 F.Supp. 1188, 1194 (N.D.Ga.1983), *aff'd,* 755 F.2d 810 (11th Cir. 1985).

The Plaintiffs cite a number of cases they claim courts have found a trust fund to be an enterprise under § 1962(c). (Plaintiffs' Response at 45.) However, it is clear to the Court that the Plaintiffs, in their zeal to find a RICO claim, have mischaracterized these cases. In *United States v. Stolfi,* 889 F.2d 378, 379–80 (2d Cir.1989), the Second Circuit approved the district court's refusal to instruct the jury that a union and a welfare benefit fund constituted two separate enterprises rather than a single enterprise. In *Mason Tenders Dist. Council Pension Fund v. Messera,* 1996 WL 351250 (S.D.N.Y. June 26, 1996), the court found that the District Council, trust funds associated with the Council, and the twelve union locals together constituted an enterprise. Similarly, in *United States v. Cervone,* No. 87 CR 579, 1988 U.S.Dist. LEXIS 16137, *1–2, 28, 1988 WL 155641, *1, 10 (E.D.N.Y., May 18, 1988), the district court found that the union local, associated labor organization which administered the trust funds, and the persons associated with and employed by the organizations together constituted an enterprise. In *United States v. Norton,* 867 F.2d 1354, 1359 (11th Cir.), *cert. denied,* 491 U.S. 907, 109 S.Ct. 3192, 105 L.Ed.2d 701 (1989), the labor union, its subordinate local unions, and its affiliated employee benefit plans together constituted the enterprise. In *Barnett v. Stern,* 93 B.R. 962 (N.D.Ill.1988), *rev'd on other grounds,* 909 F.2d 973 (7th Cir.1990), the bankruptcy court dismissed the plaintiff's RICO claims on other grounds and in passing mentioned that the trust fund was the alleged enterprise. As the Defendants point out, when viewed in the context of the entire opinion, it appears that the court's comment regarding the enterprise was only background dicta on the way to discussing the grounds for which the court dismissed the case: no pattern of racketeering activity. Moreover, the Court of Appeals for the Sev-

plaint ¶ 81), are not sufficiently distinct from four of the five enterprises asserted in the Plaintiffs' Complaint. (Plaintiffs' Complaint at § 82 (all defendants are enterprise), ¶ 83 (all Defendants and past and present Meineke franchisees are enterprise), ¶ 85 (Meineke franchise system is enterprise), and ¶ 86 (all Defendants and the advertising agencies with which New Horizons or MDMSI contracted are alleged to constitute enterprise).) As a result, the Plaintiffs effectively abandoned these four RICO enterprise theories.

enth Circuit reversed and remanded the decision; hence, the case has negligible or no persuasive value.

At best, these cases when taken together stand for the proposition that a legal entity or any union or group of individuals associated in fact which otherwise meets the statutory definition of an enterprise may, in addition, include its associated trust funds. Suffice it to say none of the cases cited by the Plaintiffs holds that a trust fund, by itself, is an enterprise for the purposes of RICO.[5]

Therefore, the WAC Fund, as a matter of law, is not an enterprise under 18 U.S.C. § 1961(4). It follows that the Plaintiffs have not sufficiently alleged "persons" distinct from an "enterprise," and the Defendants are entitled to judgment as a matter of law regarding the § 1962(c) RICO claim (Count I). Hence, because there are no genuine issues of material fact, and the Defendants are entitled to judgment as a matter of law regarding Count I, the Defendants' motion for summary judgment on this issue is granted.

■ Furthermore, even if the WAC Fund was an enterprise, the Defendants' request for summary judgment on Plaintiffs' § 1962(c) RICO claim can be granted on an alternative ground. The "pattern of racketeering activity" relied on by the Plaintiffs requires a finding that a fiduciary or agency relation existed between the parties regarding the FTA and the WAC fund.[6] If the Defendants are found to be the fiduciaries or the agents of the WAC Fund, then the alleged RICO persons (Defendants/trustees) would not be sufficiently distinct from the RICO enterprise (WAC Fund/trust fund). Therefore, if the jury finds a fiduciary duty, the § 1962(c) claim fails for not meeting the threshold requirement of an enterprise sufficiently distinct from the RICO persons.

As mentioned *supra*, it is well-settled in the Fourth Circuit that the persons accused of a § 1962(c) RICO violation must be sufficiently distinct from the enterprise in question. *Busby v. Crown Supply, Inc.*, 896 F.2d 833, 840 (4th Cir.1990) (citing *United States v. Computer Sciences Corp.*, 689 F.2d 1181, 1190 (4th Cir.1982), *cert. denied*, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983)).

Whether a trust fund and its trustees or fiduciaries are sufficiently distinct for the purposes of RICO is an issue of first impression in the Fourth Circuit. However, *In re EPIC Mortgage Ins. Litig.*, 701 F.Supp 1192, 1252 (E.D.Va.1988), *aff'd in part and rev'd in part on other grounds sub nom., Foremost Guar. Corp. v. Meritor Sav. Bank*, 910 F.2d 118 (4th Cir.1990), is particularly enlightening. In *Epic Mortgage*, the federal district court dismissed a RICO claim in which the enterprise consisted of limited partnerships and the alleged indirect subsidiary of the alleged person was general partner to the said limited partnerships. The court reasoned that "[b]ecause the limited partnership could act only through their general partner, they were, in practical effect, analogous to subsidiaries of [the person]. Certainly, the relationship between [the person] and the [limited] partnerships was no more distant than that between a parent and subsidiary, or a franchiser and its franchisees." *EPIC Mortgage*, 701 F.Supp. at 1252. It is clear that the relationship between a trust and a trustee is more direct, and less distinct, than the relationship between limited partnerships and a corporation whose indirect subsidiary is the general manager of the limited partnerships. It follows then that a trustee "person" cannot be sufficiently distinct from the trust "enterprise" for the purposes of a § 1962(c) RICO claim. Hence, even if the WAC Fund were a RICO enterprise, the Defendants, as trustees of the WAC Fund, could not be sufficiently distinct persons under RICO as a matter of law. As a result, because there are no genuine issues of material fact, and the Defendants are entitled to judgment as a matter of law, the Defendants' motions for summary judgment regarding the § 1962(c) RICO claim will be granted.

5. Further damaging to the Plaintiffs' case is the fact that none of the cases cited are from the Fourth Circuit.

6. As discussed in this opinion, Plaintiffs' claims, other than breach of contract, hinge on finding a fiduciary relation between the parties regarding the WAC Fund.

*2. 18 U.S.C. § 1962(d) (Count II)*

■ The Court may grant the Defendants' motions for summary judgment regarding Plaintiff's RICO claims under 18 U.S.C. 1962(d) (Count II) on two alternative grounds. First, in the Court's view, a conspiracy pursuant to § 1962(d) to violate § 1962(c) cannot survive without a threshold showing of an "enterprise" sufficiently distinct from "persons" under § 1962(c). *Prudential–Bache Securities, Inc. v. Cullather,* 678 F.Supp. 601, 608–09 (E.D.Va.1987) (dismissing § 1962(d) conspiracy claim because plaintiff failed to allege a "person" separate from an "enterprise"); *Greek Radio Network of America, Inc. v. Vlasopoulos,* 731 F.Supp. 1227, 1236 (E.D.Pa.1990); *Gilbert v. Prudential–Bache Securities, Inc.,* 643 F.Supp. 107, 110 (E.D.Pa.1986); *Rich Maid Kitchens, Inc. v. Pennsylvania Lumbermens Mut. Ins. Co.,* 641 F.Supp. 297, 311 (E.D.Pa.1986). Because the Plaintiffs failed to make a threshold showing of an enterprise sufficiently distinct from persons under § 1962(c), and thus there was not a cognizable § 1962(c) claim (*see* Order, § III.D.1.), Plaintiffs' claims that the Defendants conspired to participate in a noncognizable § 1962(c) claim in violation of § 1962(d) must also fail. Hence, because there are no issues of material fact, and the Defendants are entitled to judgment as a matter of law, the Defendants are entitled to summary judgment on Count II.

■ Second, the Plaintiffs' claims under § 1962(d) must also fail because a corporation cannot conspire with itself in the form of its parents, subsidiaries and officers or directors. The Court acknowledges that the Court of Appeals of the Fourth Circuit has not ruled on whether there can be an intracorporate conspiracy to sustain a RICO claim under § 1962(d). In *Busby v. Crown Supply, Inc.,* 948 F.2d 1280, 1991 WL 237923 (4th Cir.1991), the Fourth Circuit chose to pass on the issue because it dismissed the RICO claim for lack of showing the requisite pattern of fraudulent activity. *Id.* at 1280, 1991 WL 237923 at *1. In *Busby,* the district court, under facts very similar to the one at bar, dismissed the plaintiff's § 1962(d) under the intracorporate conspiracy doctrine.

Next, the district court dismissed the §§ 1962(a)–(c) RICO claims on the merits.

There is a split among the federal courts regarding whether the intracorporate conspiracy doctrine should apply to a § 1962(d) claim. The majority of cases find that a corporation cannot conspire with itself and, accordingly, dismiss § 1962(d) claims founded on an intracorporate conspiracy. *See Rhodes v. Consumers' Buyline, Inc.,* 868 F.Supp. 368, 376–77 (D.Mass.1993) (collecting cases); *Northeast Jet Center, Ltd. v. Lehigh–Northampton Airport Auth.,* 767 F.Supp. 672, 684 (E.D.Pa.1991); *Lawaetz v. Bank of Nova Scotia,* 653 F.Supp. 1278, 1287 (D.V.I. 1987) (collecting cases); *Pandick, Inc. v. Rooney,* 632 F.Supp. 1430, 1435–36 (1986); *Yancoski v. E.F. Hutton & Co., Inc.,* 581 F.Supp. 88, 97 (E.D.Pa.1983); *Landmark Sav. & Loan v. Loeb Rhoades, Hornblower & Co.,* 527 F.Supp. 206, 209 (E.D.Mich.1981).

On the other hand, the Court of Appeals for the Seventh and Ninth Circuits have recently ruled that an intracorporate conspiracy could sustain a § 1962(d) claim. *Webster v. Omnitrition Int'l, Inc.,* 79 F.3d 776 (9th Cir.1996); *Ashland Oil, Inc. v. Arnett,* 875 F.2d 1271 (7th Cir.1989). These courts conclude, with little analysis, that intracorporate conspiracies threaten RICO's goals of preventing the infiltration of legitimate businesses by racketeers.

However, the rule that a corporation cannot conspire with itself is a fundamental tenet of corporate law in the Fourth Circuit:

> It is basic in the law of conspiracy that you must have two persons or entities to have a conspiracy. A corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation.

*Moore v. American Barmag Corp.,* 710 F.Supp. 1050, 1057 (W.D.N.C.1989), *aff'd,* 902 F.2d 44 (Fed.Cir.1990) (quoting *Nelson Radio & Supply Co. v. Motorola, Inc.,* 200 F.2d 911, 914 (5th Cir.1952)). The Fourth Circuit has relied on this tenet in a myriad of areas of the law to dismiss complaints premised on an allegation that a corporation could conspire with itself. *Locus v. Fayetteville State Univ.,* 870 F.2d 655, 1989 WL 21442 at *2

(4th Cir. Mar. 8, 1989) (rejecting plaintiff's argument that rule that a corporation could not conspire with itself should be limited to antitrust cases and dismissing a civil rights conspiracy claim); *Bellamy v. Mason's Stores, Inc.*, 508 F.2d 504 (4th Cir.1974); *Eggleston v. Prince Edward Volunteer Rescue Squad, Inc.*, 569 F.Supp. 1344, 1352 (E.D.Va.1983), *aff'd without opinion*, 742 F.2d 1448 (4th Cir.1984); *Becker v. Russek*, 518 F.Supp. 1040, 1045 (W.D.Va.1981), *aff'd without opinion*, 679 F.2d 876 (4th Cir.1982). This Court does not believe that RICO warrants disregarding this fundamental tenet as expressed by the Fourth Circuit.

In this Court's opinion, because a corporation can act only through its officers and agents, and because no entity can "conspire" with itself, a corporate entity cannot "conspire" with its own officers and employees. Thus, the better rule is that, for purposes of § 1962(d), a corporation acting through its officers, even where the act is unlawful, does not constitute a "conspiracy" for purposes of § 1962(d).

Here, Plaintiffs base their § 1962(d) claim on their allegation that Defendants' operation amounted to a conspiracy among all of the Defendants. Thus, Defendants are also entitled to summary judgment on Count II on the alternative ground that, as a matter of law, it is impossible for a corporate officer to "conspire" with the corporation for purposes of § 1962(d), and there are no issues of material fact regarding this matter.

### E. *Fraud (Count IX) and Negligent Misrepresentation (Count XIII) Claims*

 Defendants assert that Plaintiffs' claims for fraud (Count IX) and negligent misrepresentation (Count XIII) fail as a matter of law because Plaintiffs cannot establish all of the elements of these claims. In North Carolina, to prove a case of actionable fraud, plaintiffs must show: (1) that defendant made a representation relating to some material past or existing fact; (2) that the representation was false; (3) that defendant knew the representation was false when it was made or made it recklessly without any

knowledge of its truth and as a positive assertion; (4) that defendant made the false representation with the intention that it should be relied upon by plaintiffs; (5) that plaintiffs reasonably relied upon the representation and acted upon it; and (6) that plaintiffs suffered injury. *Johnson v. Phoenix Mutual Life Insurance Co.*, 300 N.C. 247, 253, 266 S.E.2d 610, 615 (1980), *cited in* Defendants' Motion at 44–45. The elements for actionable fraud in Texas are similar. *See Carnival Leisure Indus., Ltd. v. Aubin*, 53 F.3d 716, 718 (5th Cir.1995).

 Likewise, in North Carolina and Texas, a plaintiff must prove four (4) elements in a claim for negligent misrepresentation: (1) a misrepresentation was made in the course of defendant's business or in a transaction in which he has a pecuniary interest; (2) the misrepresentation is false and provided for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff incurred pecuniary loss by reasonably relying on the misrepresentation. *Federal Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex.1991) (citing Restatement (Second) of Torts § 552 (1977)); *NCNB National Bank of N.C. v. Deloitte & Touche*, 119 N.C.App. 106, 112, 458 S.E.2d 4, 8 (1995), *cert. denied*, 341 N.C. 651, 462 S.E.2d 514 (1995).[7]

First, the Defendants claim they had no duty to disclose the alleged omissions to Plaintiffs because there was not a confidential fiduciary duty between the franchisor and franchisee that would give rise to a duty to disclose. Plaintiffs counter that the Defendants in fact had a duty to disclose because the Defendants owed the Plaintiffs a fiduciary duty. The Court has already determined that there is a genuine issue of material fact as to whether there was a fiduciary relationship between the parties and therefore summary judgment is not warranted on that issue. (*See* Memorandum of Decision and Order on Plaintiffs' Motion for Summary Judgment at 15.) Hence, summary judg-

---

7. The Defendants correctly state the law of fraud and negligent misrepresentation and appropriate cases in their Motion for Summary Judgment at 44–45.

ment cannot be granted on the issue of whether Defendants had a duty to disclose the alleged omissions to the Plaintiffs.

Next, the Defendants assert that the Plaintiffs' fraud and negligent misrepresentation claims are barred by their contracts. (Defendants' Motion at 49.) The Defendants argue, essentially, that all of the Plaintiffs' complaints regarding misrepresentations and omissions and the WAC account are "no more than a restatement of their breach of contract claim." Plaintiffs counter that, under Fed.R.Civ.P. 8 ("Rule 8"), they are entitled to pursue alternative theories of relief.[8] The purpose and effect of Rule 8 is to:

> free federal procedure from [the] insistence on certainty in the pleadings ... [because] flexible pleading [is] essential to a full presentation of all relevant facts and legal theories at trial and the final settlement of disputes on their merits. Consequently, under Rule 8(e)(2), a party may plead alternatively or hypothetically within a single count or defense, or assert separate claims or defenses in an alternative manner.

Wright & Miller, *supra*, § 1282 at 526. Applying the tenor of Rule 8 to Defendants' motion, the Court finds that the Plaintiffs are not precluded from presenting both their fraud and negligent misrepresentation claims to the jury as alternative theories of relief.

The Defendants then argue that the Plaintiffs cannot pursue their fraud and misrepresentation claims based on misrepresentations made outside the four corners of the FTAs. (Defendants' Motion at 49.) However, as the Plaintiffs point out, if the FTAs are tainted by the Defendants' fraud, then parol evidence would be admissible. *Mims v.*

*Mims*, 305 N.C. 41, 58, 286 S.E.2d 779, 791 n. 10 (1982).[9]

Therefore, the Court does not believe that the evidence cited by the Defendants, when taken in the light most favorable to the Plaintiffs, is sufficient to foreclose the Plaintiffs from producing evidence regarding Plaintiffs' fraud and negligent misrepresentation claims. Accordingly, the Defendants' motion for summary judgment regarding the Plaintiffs' fraud (Count IX) and negligent misrepresentation (Count XIII) claims is denied.

### F. Negligence Claim (Count XII)

The Plaintiffs alleged in Count XII that the Defendants breached the duties they owed to the Plaintiffs regarding the Defendants' administration of the WAC account. The Defendants contend again that the Plaintiffs' negligence claim (Count XII) is merely a restatement of the Plaintiffs' contract claim as a tort claim and thus is barred. The Plaintiffs counter that because there was a fiduciary relationship between the parties, the Plaintiffs may bring a claim against the fiduciary based on either breach of fiduciary duty, breach of contract, or negligence. (*See* Plaintiffs' Response at 95 (citing cases).)

The Court has already determined that there is a genuine issue of material fact as to whether there was a fiduciary relationship between the parties and therefore summary judgment is not warranted on that issue. (*See* Memorandum of Decision and Order on Plaintiffs' Motion for Summary Judgment at 15.) Hence, summary judgment cannot be granted on the issue of whether Defendants breached a fiduciary duty while administering the WAC account. Therefore, the Defen-

---

**8.** Fed.R.Civ.P. 8(a) provides in pertinent part: "Relief in the alternative or of several different types may be demanded." Fed.R.Civ.P. 8(e)(2) also provides: "A party may also state as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds."

**9.**

> No verbal agreement between parties to a written contract, made before or at the time of the execution of such contract, is admissible to vary its terms or to contradict its provisions. *Jefferson Standard Life Insurance Co. v. More-*

> *head,* 209 N.C. 174, 183 S.E. 606 [(1936)]. It will be presumed that the writing merged therein all prior and contemporaneous negotiations. *Neal v. Marrone,* 239 N.C. 73, 79 S.E.2d 239 [(1953)]. But parol evidence is admissible to show that a written contract was procured by fraud, for the allegations of fraud challenge the validity of the contract itself, not the accuracy of its terms—the instrument itself, on the issue of fraud, is the subject of dispute.

> *Fox v. Southern Appliances, Inc.,* 264 N.C. 267, 270, 141 S.E.2d 522, 525 (1965) (listing cases).

dants' motion for summary judgment regarding the Plaintiffs negligence claim (Count XII) is denied.

### G. Unjust Enrichment (Count X)

In Count X, Plaintiffs allege that the Defendants' "receipt of moneys from the Advertising Trust Fund constitutes unjust enrichment in the form of a benefit for which no fair consideration was given." (Complaint, ¶ 140, *quoted in* Defendants' Motion for Summary Judgment at 54.) Defendants first note that the Plaintiffs are suing on alternative and contrasting theories: in Count V, Plaintiffs sue for breach of the express contract regarding the WAC account; and in Count X, Plaintiffs sue for unjust enrichment which is a claim based on an implied contract. The Defendants argue that the Plaintiffs cannot sue on both an express contract and an implied contract regarding the same subject matter.

The Plaintiffs counter, again, by relying on the liberal pleading authorized by Fed. R.Civ.P. 8, and argue that they can "sue on a contract and at the same time alternatively repudiate the agreement and seek recovery on a quantum meruit claim or allege fraud or some other tort theory." Plaintiffs' Response at 96 (quoting 5 Wright & Miller, *supra,* § 1283 at 537). Further, Plaintiffs contend that an unjust enrichment claim is available, independent of any repudiation of the FTAs, based on the Defendants' breach of a fiduciary duty.

As the Court stated *supra* (see § III.E.), the Court agrees that the Plaintiffs, pursuant to Fed.R.Civ.P. 8, may pursue alternative theories of relief. "The present practice under Rule 8(e)(2) permits a party to seek inconsistent remedies in his claim for relief without being required to elect between them at the *pleading stage* of the litigation." *See* 5 Wright and Miller, *supra,* § 1283 at 538 (emphasis added). This includes the ability to present breach of contract and tort claims on the same agreement. *Id.,* at n. 10 and accompanying text.

Further, in North Carolina, unjust enrichment is an equitable remedy for, inter alia, a breach of fiduciary duty. *Booher v. Frue,* 98 N.C.App. 570, 580, 394 S.E.2d 816, 821, *review denied,* 327 N.C. 426, 395 S.E.2d 674 (1990), *cited in* Plaintiffs' Response at 96. Because the Court has determined that summary judgment is not warranted regarding whether the parties had a fiduciary relationship, summary judgment is also not warranted regarding an equitable remedy of unjust enrichment to the breach of the fiduciary duty.

For the reasons stated *supra,* the Defendants' motion for summary judgment on Plaintiffs' claim for unjust enrichment is denied.

### H. Summary Judgment as to Defendant GKN on Plaintiffs' Claims for RICO Violations, Unfair and Deceptive Trade Practices, Breach of Contract, Breach of Covenant of Good Faith, Breach of Fiduciary Duty, Conspiracy/Aiding and Abetting, Fraud, Unjust Enrichment, Intentional Interference With Contractual Relations, Negligence, Negligent Misrepresentation, and An Accounting

Defendant GKN filed its motion for summary judgment ("GKN's Motion") separate from the Defendants' Motion. In its motion, Defendant GKN requested summary judgment on Plaintiffs' claims for RICO violations (Counts I and II; *see* GKN's Motion § II.B.); unfair and deceptive trade practices (Counts XV and IV; *see* GKN's Motion § II.B.); breach of contract (Count V; *see* GKN Motion § II.C.); breach of covenant of good faith (Count VI; *see* GKN Motion § II.D.); breach of fiduciary duty (Count VII; *see* GKN Motion § II.E.); conspiracy/aiding and abetting (Count VIII; *see* GKN § II.F.); fraud (Count IX; *see* GKN Motion § II.G.); unjust enrichment (Count X; *see* GKN Motion § II.H.); intentional interference with contractual relations (Count XI; *see* GKN Motion § II.I); negligence (Count XII; *see* GKN Motion § II.J.); negligent misrepresentation (Count XIII; *see* GKN Motion II. K.); and an accounting (Count XIV; *see* GKN Motion II.L.). In addition to the arguments germane to each individual claim (*see* citations to individual sections *supra* ), GKN also argues that all of the claims are barred

by the applicable statute of limitations (*see* GKN Motion § II.M.).

As an initial matter, GKN's motion for summary judgment on all of Plaintiffs' claims because they are allegedly time barred is denied for the reasons discussed in this Order, *supra,* § III.B.

Next, the Court addresses GKN's motion for summary judgment regarding the remaining claims. Plaintiffs argue that GKN's motion should be denied because the structure and management of the GKN "family" presents a genuine issue of material fact as to whether liability for Meineke and the other Defendants can be extended to GKN by disregarding the separate corporate entities and piercing the corporate veil of GKN's subsidiaries.

Disregarding the corporate form by piercing the corporate veil is an equitable doctrine used to prevent fraud or to achieve equity. *Glenn v. Wagner,* 313 N.C. 450, 454, 329 S.E.2d 326, 330 (1985). Courts employ the doctrine to extend liability for corporate obligations beyond the confines of the corporation's separate legal entity to reach, for example, corporate officers and parent corporations. *Id.* (citing 18 Am.Jur.2d, *Corporations* § 15 (1965)).

In North Carolina, the instrumentality rule is the basis for piercing the corporate veil. In *Glenn v. Wagner,* the North Carolina Supreme Court described the instrumentality rule, the elements required to support a claim under the rule, and the factors considered by the court when considering whether to pierce the corporate veil:

> A corporation which exercises actual control over another, operating the latter as a mere instrumentality or tool, is liable for the torts of the corporation thus controlled. In such instances, the separate identities of parent and subsidiary or affiliated corporations may be disregarded.

This Court has enumerated three elements which support an attack on separate corporate entity under the instrumentality rule:

> (1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and

> (2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of plaintiff's legal rights; and

> (3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

Factors which heretofore have been expressly or impliedly considered in piercing the corporate veil include:

> 1. Inadequate capitalization ("thin incorporation").
> 2. Non-compliance with corporate formalities.
> 3. Complete domination and control of the corporation so that it has no independent identity.
> 4. Excessive fragmentation of a single enterprise into separate corporations.

*Glenn,* 313 N.C. at 454–55, 329 S.E.2d at 330–31 (citations omitted); *see generally* Robinson, *North Carolina Corporation Law,* §§ 2–10(b) (5th ed. 1995).

First, Plaintiffs urge that equity demands piercing the corporate veil under the instrumentality rule. Next, Plaintiffs argue that in addition to the instrumentality rule, "there are three other grounds besides the alter-ego theory for piercing the corporate veil in North Carolina: excessive fragmentation into separate corporations, failure to observe corporate formalities, and inadequate capitalization." (Plaintiffs' Response at 101 (citing *Glenn,* 313 N.C. at 455, 329 S.E.2d at 330–31).) [10]

---

10. The Court disagrees with the Plaintiffs' (and with Mr. Robinson, author of the treatise cited by the Plaintiffs) interpretation of *Glenn* on this point. In *Glenn,* the North Carolina Supreme Court stated that the basis for piercing the corporate veil is the instrumentality rule, and the proponent of piercing must prove the three elements listed by the North Carolina Supreme Court:

1. *Control by GKN of its subsidiaries such that the other Defendants did not have, at the time, a separate mind, will, or existence of their own.*

Plaintiffs' presented evidence that: GKN, through its subsidiaries, was the sole shareholder of Meineke; GKN executives were on Meineke's Board of Directors; GKN dictated that New Horizons "tease up the surplus" of its Yellow Pages Profit Center; GKN actively participated in setting Meineke's budget; GKN's network of subsidiaries are excessively fragmented while all of the funds from GKN's subsidiaries flow into one centralized bank account; Meineke and GKN PIC did not pay dividends to GKN; GKN subsidiaries failed to observe corporate formalities by not having Board of Director meetings, no keeping minutes, and not adopting bylaws; GKN indiscriminately intermingled assets and employees throughout their subsidiaries; Defendant Smythe, Meineke's former CEO, could not recall when the last Meineke Board meeting took place; Meineke and New Horizons intermingled employees, and New Horizons offices were cubicles within Meineke's corporate headquarters in Charlotte; and GKN, through Meineke, inadequately capitalized New Horizons. (Plaintiffs' Response at 99–104.) These facts allege that GKN exercised control of its subsidiaries such that the other Defendants did not have, at the time, a separate mind, will, or existence of their own, and they are sufficient to withstand summary judgment.

2. *GKN used the control to commit the fraud or wrong, to perpetrate the violation of a statutory ·or other positive legal duty, or a dishonest and unjust act in contravention of Plaintiffs' legal rights.*

As discussed in this Order *supra*, Plaintiffs have presented evidence that GKN and the other Defendants committed fraud and other wrongs in contravention of Plaintiffs' legal rights, and this evidence is sufficient to withstand summary judgment. (*See* Order, *supra* §§ III.C.–III.J.)

3. *GKN's control or breach of duty proximately caused the injury or unjust loss the Plaintiffs complain of.*

The facts listed *supra* showing GKN's control over its subsidiary also make an initial showing that GKN's control or breach of duty proximately caused the injury or unjust loss the Plaintiffs complain of. This initial showing is sufficient to withstand summary judgment.

In summary, the Plaintiffs' have presented evidence that GKN exercised actual control over its subsidiaries, and operated the latter as mere instrumentalities or tools, that may warrant piercing the corporate veil. This evidence is sufficient to withstand summary judgment. Therefore, Defendant GKN's request for summary judgment regarding Plaintiffs' claims for breach of contract, breach of covenant of good faith, breach of fiduciary duty, conspiracy/aiding and abetting, fraud, unjust enrichment, intentional interference with contractual relations, negligence, negligent misrepresentation, and an accounting is denied. Defendants' request for summary judgment regarding Plaintiffs' RICO violations and unfair and deceptive trade practices are discussed in this Order at §§ III.D. & III.J. respectively.

I. *Summary Judgment as to Defendants PIC, Smythe, Zhiss and Pearce on Counts V and VI Because They· are Not Parties to the Contracts Between Meineke and Class Members*

Defendants claim that PIC, Smythe, Zhiss and Pearce are entitled to summary judgment on Counts V and VI because they are

---

complete domination and control, such control used by the defendant to commit fraud or wrong in contravention of plaintiff's rights, and the control and breach of duty proximately cause the injury or unjust lost complained of. *Glenn*, 313 N.C. at 455, 329 S.E.2d at 330. The Court believes that a better interpretation of *Glenn* is that inadequate capitalization, noncompliance with corporate formalities, and complete domin-

ion and control are factors subsumed in the analysis of whether the three elements are proven to support piercing the corporate veil under the instrumentality rule. In any event, the factors should be weighed by the Court when considering whether to pierce the corporate veil. As described *infra*, this Court considered the factors in its analysis.

not parties to the contracts between Meineke and class members. (Defendants' Motion at 55).

For the reasons stated *supra*, the Court does not believe that the evidence cited by the Defendants, when taken in the light most favorable to the' Plaintiffs, is sufficient to foreclose the Plaintiffs from producing evidence that Defendants PIC, Smythe, Zhiss and Pearce can be liable for the contracts in issue by piercing the corporate veil. Accordingly, the Defendants' motion for summary judgment regarding Defendants PIC, Smythe, Zhiss and Pearce and Counts V and VI is denied.

### J. *North Carolina and Texas Unfair and Deceptive Trade Practices Acts (Counts XV and IV)*

#### 1. *North Carolina Act*

■ Defendants assert that they are entitled to summary judgment on Plaintiffs' North Carolina Unfair and Deceptive Trade Practices Act section 75–1.1 because no named Plaintiff has standing to bring such a claim.[11] Defendants contend that because no named Plaintiff has "business operations" in North Carolina, the Plaintiffs do not have standing under section 75–1.1. (Defendants' Motion at 55; GKN's Motion at 19–25.) In like manner, Defendants also contend that they did not conduct any "trade" in Texas during the class period. *Id.*

■ The North Carolina Unfair Trade Practices Act, N.C.Gen.Stat. § 75–1.1 provides, in pertinent part:

(a) Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful.

(b) For purposes of this section, "commerce" includes all business activities, however denominated . . .

N.C.Gen.Stat. § 75–1.1 (1994). The wording of the statute and its purpose is broad and section (b), on its face, extends the statute to commercial dealings between persons at all levels of commerce. *Bhatti v. Buckland*, 328 N.C. 240, 245, 400 S.E.2d 440, 443–44 (1991). Prior to 1977, section 75–1.1 was specifically limited to "dealings within this state." *The In' Porters, S.A. v. Hanes Printables, Inc.*, 663 F.Supp. 494, 501 (M.D.N.C.1987) (citing *American Rockwool, Inc. v. Owens–Corning Fiberglas*, 640 F.Supp. 1411, 1427 (E.D.N.C. 1980)). North Carolina's General Assembly deleted the geographical limitation in 1977. Courts interpreted the legislature's action as a desire to expand the scope of section 75–1.1 to the limits of North Carolina's long-arm statute, N.C.Gen.Stat. § 1–75.4(4). *Id.* Thus, section 75–1.1 applies if the plaintiff alleges a "substantial injurious effect on plaintiff's business operations in North Carolina." *Dixie Yarns v. Plantation Knits*, 3:93CV301–P, 4 (W.D.N.C. July 12, 1994) (citing *"In" Porters*, 663 F.Supp. at 501). Defendants argue that because none of the named Plaintiffs have a franchise located in North Carolina, the Plaintiffs do not have "operations" in North Carolina. Thus, the argument goes, no acts of any of the Defendants could cause an "in-state" injury to the Plaintiffs' business under section 75–1.1. (GKN's Motion at 22–23.)[12] Without an in-state injury, the Defendants aver that the Plaintiffs do not have standing to bring a claim under section 75–1.1.

The Defendants' argument is unpersuasive. The Plaintiffs have alleged injuries to their business operations and transactions in North Carolina pursuant to section 75–1.1 that are sufficient to survive summary judgment. First and foremost, the Plaintiffs have specifically alleged, *inter alia*, fraud and breach of fiduciary duty by the Defendants regarding the daily administering of the WAC account into which franchisees paid

---

**11.** The Court does not believe that the Defendants argue that the North Carolina Unfair Trade Practices Act violates the Commerce Clause of the United States Constitution. U.S. Const. art. I, § 8, cl. 3. However, in the interest of being complete, the Court notes that it is well-settled that the North Carolina Unfair Trade Practices Act does not violate the Commerce Clause. *See*

*ITCO Corp. v. Michelin Tire Corp.*, 722 F.2d 42 (4th Cir.1983).

**12.** The Court includes GKN in the term "Defendants" for the purposes of this analysis because the Court determined that piercing GKN's corporate veil, and that of its subsidiaries, may be warranted. (*See* Order, § III.H.)

significant commissions (up to 12% of a franchisee's gross revenues). Significantly, the WAC account at all times remained in North Carolina. If the Defendants wrongfully administered the WAC account as alleged by the Plaintiffs, then the wrong occurred in North Carolina. It would follow, then, that the Defendants injured the Plaintiffs' business operations in North Carolina. As previously discussed, the Plaintiffs have submitted evidence of fraud and breach of fiduciary duty that are sufficient to withstand summary judgment. Hence, summary judgment on the Plaintiffs' section 75–1.1 claim is also unwarranted.

Further, Plaintiffs submitted evidence of continuing and on-going business transactions between the Plaintiffs and Defendants that occurred in North Carolina due to their franchisor-franchisee relationship memorialized by the FTA. (See Plaintiffs' Response 70–72.) Many of these factors are identical to those relied on by a sister court to deny a defendant's motion to dismiss a section 75–1.1. claim. See Jacobs v. Central Transport, Inc., 891 F.Supp. 1088 (E.D.N.C.1995).

In Jacobs v. Central Transport, Inc., the non-resident plaintiffs operated their businesses in numerous states other than North Carolina pursuant to lease agreements that each of them entered into with the North Carolina defendant. First, the district court stated that "[s]ection 75–1.1 is available to a foreign plaintiff suing a resident defendant over alleged foreign injuries having a substantial in-state effect on North Carolina trade or commerce." Jacobs, 891 F.Supp. at 1112. Next, the court noted that: the defendant's corporate headquarters and bookkeeping were located in North Carolina; operative and controlling documents were sent by the defendants from North Carolina to the nonresident plaintiffs; and most of the defendant's performance and business decisions regarding the contract occurred in North Carolina. Jacobs, 891 F.Supp. at 1111–12.

The Court finds the reasoning in Jacobs sound and in accordance with the North Carolina legislature's desire to expand the scope of section 75–1.1 to the limits of North Carolina's long-arm statute. To be sure, the Plaintiffs' contacts, through the numerous continuous and systematic business transactions with the Defendants in the forum, all pursuant to the FTA, warrant this Court exercising personal jurisdiction over the Plaintiffs under the North Carolina long-arm statute. Therefore, it follows that section 75–1.1 would govern the same transactions. The Court's decision to dismiss the section 75–1.1 claim in Dixie Yarns is limited to the facts of that case, and in any event, for the foregoing reasons, the Defendants' reliance on that case is misplaced because the Plaintiffs have presented evidence that the Defendants have caused a substantial injury to the Plaintiffs' business operations in violation of the North Carolina Unfair Trade Practices Act section 75–1.1.

In viewing the evidence in the light most favorable to the Plaintiffs, the Plaintiffs' evidence is sufficient to survive summary judgment. As a result, the Defendants' requests for summary judgment on Count XV are denied.

### 2. The Texas Act

The Texas Deceptive Trade Practices–Consumer Protection Act provides that, "False, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Texas Business & Com.Code Ann. § 17.46(a) (1995). Under this act, a party bringing a private cause of action must prove "the use or employment by any person of a false, misleading, or deceptive act or practice that is specifically enumerated in [the statute] … or any unconscionable action or course of action by any person." Id., § 17.50(a)(1) & (a)(3). Various forms of fraud and misrepresentations violate the act. Id., § 17.46(b).

Other than admitting that some of the franchisee class members have in fact had business operations in Texas since 1986, Defendants essentially repeat the same standing argument discussed and analyzed supra. For the reasons stated supra, the Defendants' motions for summary judgment on Count IV are denied.

## IV. CONCLUSION

In summary, the Court will grant the Defendants' motions for summary judgment

regarding Counts I and II, and deny the Defendants' motion for summary judgment regarding all other Counts.

**NOW, THEREFORE, IT IS ORDERED** that the Defendants' motions for summary judgment [document nos. 112–1 and 114–1] regarding Counts I and II be, and hereby are, *GRANTED.*

**IT IS FURTHER ORDERED** that the Defendants' motions for summary judgment regarding all other Counts be, and hereby are, *DENIED.*

The Court will file a Partial Summary Judgment Order simultaneously with this Order.